Good afternoon. May it please the Court. My name is Katherine Windsor and I represent the appellant in this case, George Wu. I'd like to reserve three minutes for a rebuttal. As I did in the brief, I thought I'd start with the constructive amendment issue. You know, that is a very odd situation. I've never seen anything quite like that. But I wonder if that is the best way to frame the issue. Because the indictment actually doesn't name any individuals at all. Yes. So it's not a change in that respect. It just says bribery of a public official. And the issue came up by way of instructions. And in fact, instructions that you had agreed to. So the question is, why shouldn't we view this as a question of instructional error and potentially invited error? Well, because this really does, when you look at what happened in this case, this really is the classic story of what happens with a constructive amendment case. Typically in that sort of case, the indictment charges something fairly narrow and then maybe uses a generic term like a public official. Or in the aggravated identity case in Ward, it was just using any. Let me zero in on what's bothering me, though. Suppose they had named the actually correct person rather than the incorrect person in the instructions. Would you still be claiming that it's an alteration of the indictment? No. If they had named the correct. So I don't understand how it turns into that animal, because they named the wrong person instead of the right person. That is, the indictment says public official, and this was a public official. It was just the wrong one. But I still don't understand why that isn't just instructional error. Well, the definition of a constructive amendment is when the instructions point the jury to activity that is outside what is charged in the indictment. And that's what this instruction did here. It wasn't outside the indictment. It was outside the proof, because they named the wrong person. Well, it was also, it was outside the indictment as to these two counts. So for these two counts, they needed to, the instructions needed to explain that they were through the cooperating witness, John Lee, and who was supposed to give it to some unknown public official. And that's why the name wasn't listed there. But in this case, what the instructions did was they brought, they took the jury outside of what had been charged to evidence that was charged in count one, but it was not evidence that was charged in count three. And so as a result, the jury convicted on uncharged conduct just as to those two counts. And so that's what our argument is, is that these instructions did really the classic thing that instructions do in the constructive amendment context, where they point the jury to or allow the jury to make a finding based on conduct that was not charged in these counts. And in fact, the evidence that they, there was this narrow charging, and then the instruction said, hey, instead of looking at what we charged, you should look at this other evidence that we didn't charge. Why do you say it's narrow, this narrow charging? What's narrow about it? I mean, because for count three, wasn't it just an unnamed public official? Well, but it was a very specific event that the government was charging, or two specific events that had to do with bribes that were paid through John Lee, who was cooperating with the government. And then because he was cooperating, there wasn't actually a government official. But it was a very, it was a narrow charge. It was a substantive act of bribery in that count. But he was just a conduit. I mean, it was going, supposedly going to a public official, right? Right, right. There's not any problem with the way it was charged, and there's not, we're certainly not claiming a sufficiency issue at all. What we're saying is that the instruction, by telling the jury actually don't look at John Lee, you have to make a finding that Fred Molt or this other guy, Dan Amos, was the public official. I mean, it was a general verdict form, right? The verdict form was very simple. It just listed. I understand. That's what I'm saying. It was very general. It didn't specify, look, this is going to X, this is going to Y, and this is going to Z. Right. The indictment had alleged these specific counts of substantive bribery. The verdict form was very broad, and then the instructions were narrow but in the wrong direction. They were telling the jury to consider this uncharged conduct. And so I really, I think it fits best into the constructive amendment analysis. I also think it's really close to those cases where there's legal impossibility, where some of the charges are outside of the statute of limitations, for example. Counsel, I'm surprised you say that there is no sufficiency problem here. It seems to me that, from your perspective, your client was convicted of something that, as a factual matter, we know is not true. Yeah. In terms of the instructions. So that being the case, wouldn't you say that is a sufficiency of the evidence problem? Well, I guess what I meant by that is it's not a sufficiency of the evidence. I'm not making a claim that the government didn't present any evidence of a bribe to John Lee, which is what they charged. Right. That's what they intended. But what the jury was asked to find, beyond a reasonable doubt, was what was listed in counts three and four. Right? Right. And the parties agree, and we'll confirm with Mr. O'Brien, that there was no evidence of that, of counts three and four. There was. I mean, no, the government presented evidence of that at trial. As the bribes to those two individuals, as instructed? The issue is the instruction versus what was proved. The proof was there. The instruction was incorrect. Right. They did present evidence, to answer your question, of the bribes to John Lee that were going to go to this unknown public official, and they also presented evidence of a separate, of two separate bribes through Fred Moult, also having to do with this same immigrant's case, the Zane case. But I thought that as to counts three and four, your argument was that, as instructed, the jury was to find, beyond a reasonable doubt, whether bribes were paid to Moult or Amos. Yes. And I thought the parties agreed there was no evidence that on those dates that happened. Well, that's true. There's no evidence on those dates. There was evidence about three months later that the government presented evidence of an alleged bribe to Moult regarding this same case. But that was not what they had intended and what they charged in counts three and four. No, I understand. So just for my question, just put the indictment aside for a second. Okay. The jury was asked to find, by a reasonable doubt, did, were these bribes paid to Moult or Amos on these dates? Yes. The parties agreed that there's no evidence that it ever happened on those two dates. On those two dates, no. And it's not on and about. It's not like it was a day here, a day there. Right, right, right. No, it was a couple months later. Okay. So that being the case. Yes. And I'm going to ask Mr. O'Brien the same question. Are you aware of any cases that allow us to uphold a verdict in a criminal case where the parties agreed there was no evidence of what the jury was instructed to find?  I mean, I think this, I really do think on these cases that there's, the Court has no choice but to reverse. On these two counts, not asking for everything, but this is for, on counts three and four, this, you know, it wasn't anybody's fault. It was a mistake. But it, the jury really was pointed in the wrong direction by this misinstruction. And what's the practical effect on your client if we, if we rule in your favor? So we would, so we would be asking for resentencing. He still has about a year on his sentence. So that's the biggest effect. And then I guess also the $200 special assessment. I guess you'd be hoping to pitch the District Court to let him out now. Exactly. Okay. You have a little bit of time left if you want to save it. So I just, would the Court like me briefly to turn to the other? It's up to you. It's your time. You can use it now or you can use it later. Okay. I'll sit down and reserve the rest of my time. Mr. O'Brien. Good afternoon. May it please the Court. Daniel O'Brien appearing on behalf of the United States. I'd like to kind of cut to the chase on this erroneous instruction. Both parties agree that the defense has to prove that it was prejudiced by the outcome and that it violated the fairness and integrity of proceedings. And I'd like to point out to a quote from page 5, lines 7 through 8 of the defendant's reply brief. And they say, quote, the government shows that it proved the acts charged in counts 3 and 4. The defense does not dispute this. So I don't see how the defendant can possibly prove prejudice when it concedes the guilt was proven on counts 3 and 4 based upon the evidence at trial. That despite an instructional error, the defendant concedes that the crime was proven and that means there's no prejudice. And if I could. What's our standard of review of that? It struck me that it was very unusual that these erroneous instructions were agreed to by both parties. Obviously a mistake by both. What do we do with that? Yeah, as I cited, as both parties cited in their brief under that instructional error, that's also plain error review. I'd like to get to the question that was already kind of posed to me before I came up here. This is not a case where a defective instruction expanded the charge to some other theory of conviction. It actually suggested another theory that couldn't possibly be proven. And that's how we know that the jury didn't rely on this jury instruction, because had they relied on this jury instruction, they would have acquitted. This is a situation where the parties didn't dispute that money was paid on a specific day to a specific individual in specific amounts. The parties agreed to that, and so the jury didn't focus on that instruction, for the same reason neither party focused on this instruction and made an error. The jury convicted based upon the evidence that was submitted at trial and also the indictment that was charged. And how do we know that the jury didn't proceed down this theory postulated by the defense? Well, it's not just a question of the dates being wrong. It's the number of acts that are involved. There was only one bribe in connection with the N.Y. Zhang application that was offered to Mr. Moult months later, one bribe. And yet there's two counts of conviction. It being, I think, three or four months later, and I don't know how you can pigeonhole one bribe, into two bribery counts on different days, it's clear that the jury did not go down that road. We know that the jury relied on the indictment because they asked for it. The first jury note, in fact, I think the only jury note that came from the jury was they asked for the indictment so that they could specifically link up the evidence to those acts charged in the indictment. And the indictment was pretty clear with regard to what happened with regard to the alien N.Y. Zhang. It set forth the events in a very linear fashion. There were two bribes paid to Mr. Lee, and as a result of those two bribes, the government issued a conditional green card. That presented a problem for the defendant and his client because it's just a conditional green card and it doesn't do him much good. And so then when the defendant approached another person, Mr. Moult, yes, he offers a single bribe to clear up that condition. So it's not a confusing indictment with regard to what transpired with regard to this immigrant Zhang, rather clear. We also know that the jury relied on the evidence because they listened to this evidence, these recordings, for a week. It might be difficult for this court to assimilate all the data in sterile briefs and excerpts of record, but the jury heard the recordings that were played. They had transcripts to read from the time they were played. The government actually paused the recordings and then inquired of the witnesses with regard to what happened in the transcripts. The government also cross-examined the defendant with those specific transcripts. And also in an unusual stipulation, the parties agreed that the transcripts could go with the jury back into the jury room. By stipulation we agreed to that. So this isn't a case where the evidence was confusing or the jury might have gone down the wrong road. The evidence at trial was consistent with what was in the indictment, and also the arguments were consistent with what was presented at trial and also what was alleged in the indictment. This is not a situation where the government fails on one theory and then adopts a plan B through jury instruction. I think we all agree with that, which is why this case is so odd. This is not the cement steel of Sterone. It seems to me this is the kind of case where the guy robbed Bank of America on February 1st and the jury instruction said he robbed Wells Fargo on April 3rd. And I just don't know of any authority. I've never seen this happen before, and that's usually not great for the prosecution. Usually we want something to support us on that. So what is your take, then, on the role of jury instructions in a case like this? Did it really matter they could say anything? As long as the indictment says what it says, could they say he killed a guy or he broke windows? And as long as the indictment is there, we're good? The presumption is that the jury has read the instructions and is applying the instructions. But like any presumption, it can be rebutted. And I think the facts that I've set forth, that they would have acquitted if they had relied on that instruction and that the fact that the evidence linked up to the indictment, linked up to the argument, and even more importantly, I think the way you resolve this is that the parties agree that the defense has to show prejudice. And they've admitted that the conduct alleged in counts three and four was proven by the government. They don't dispute that. I could move on to the other argument, and that is with respect to the cross-examination of the defendant. I haven't much time, so I want to focus on some highlights. All the questions that the government asked of the defendant during cross-examination were pertinent to show predisposition, with the defendant having raised the entrapment defense. In addition to the bribery charges, the government charged the client conspiracy, that is to interfere with the government's functions through dishonest means, and the questions pertain to many dishonest acts committed by the defendant as a government employee that obstructed Citizen and Immigration Services, CIS. The defendant on cross-examination admitted that he swore an oath to uphold the law. He admitted he knew he was prohibited from both accessing and leaking immigration records, and he nevertheless admitted that he illegally accessed files for his employees, for his family members, and for others, all of whom had pending immigration applications. He also admitted to the agents that he leaked information from these immigration files. And so it was dishonest for the defendant to violate his oath by accessing and leaking information that had been entrusted to him, and it also interfered with government functions when he did so. People aren't supposed to get green cards by illegally accessing government files through the back door. It's dishonest, and it obstructs the government's functions, and that's why it's relevant to the predisposition on the client conspiracy. These questions were also relevant to predisposition on the bribery charges, because the government asked questions not only about improper official acts committed by the defendant, but also his suspicious receipt of cash during the same time frame. He admitted that he had been offered a bribe in return for citizenship while he was a government employee, and he also admitted receiving an interest-free loan from the same individual. He admitted that from 2008 through 2011 he unlawfully accessed immigration records, and he admitted at the same time frame, 2009, he received bulk cash deposits that were deposited into the Kiki Beer House, his restaurant. I'll also point out that the standard of review here is abuse of discretion, and the court only permitted this evidence to come in under very conservative criteria. The court said not only did the defense have to submit an entrapment defense for this evidence to come in, but also he had to testify. And so that raised both predisposition issues and credibility issues on the part of the defendant. The court also exercised discretion under 403 to exclude some of this evidence that the government had tried to submit. That is, these cash deposits into his developmentally disabled brother-in-law's account, which then found its way to the Kiki Beer House through circuitous means. Just to wrap up, I've got about 40 seconds left. The defendant complains there's no limiting instruction. The defense never requested one. The government argued for the jury to consider the evidence only on the issue of predisposition and credibility. And even if somehow someone would think that the cross-examination was too thorough, there's always the harmless error analysis. And this case came down to entrapment, and it was refuted in so many ways during the cross-examination of defendant. There were multiple instances of prior dealings prior to the government's undercover operation in which the defendant engaged in bribery. And I'll submit, because I'm past my time. Thank you. Ms. Windsor, you have a little time left. What the government is saying is that we should assume that the jury caught the mistake that the lawyers and the court missed. And I really take issue with the argument that the jury would have acquitted if they had relied on the mold evidence. You know, I'm not saying the evidence was overwhelming on that. For none of this was it overwhelming. I'm just saying the government did present evidence of alleged bribes concerning mold. There were two overt acts that were listed where there were conversations and where money was offered or suggested. You know, I'm not saying that those were slam-dunk cases, but when the jury is told you're supposed to consider bribes made to account for mold, and there is evidence. So let me ask you this. Do you agree with the proposition that if we view this as a confusing jury instruction problem, that you have to show prejudice? Well, I'm right. This Court has held that I have to meet the plain error standard. Okay, so you have to show prejudice. What is the prejudice in light of the fact that there was evidence of the exact crime that was indicted? Because it's entirely possible that the jury would have acquitted on counts three and four had they been properly instructed. Because John Lee was a tricky fellow, and that sort of evidence was entirely different. He was, you know, working off of the... But isn't that just, I mean, that just seems like wildly speculative to me when there's clearly the evidence to support exactly what was charged. Well, I mean, I certainly, what I've always wanted to make clear was that I'm not saying that the evidence was insufficient, that they didn't present any evidence. I know that. But I definitely don't think it was overwhelming by any means. And I think that John Lee had a lot of problems as a witness. But you do have to show prejudice. Yeah, but this Court in Bexar has said that just having sufficient evidence doesn't mean that the evidence is overwhelming such that plain error is precluded. In Bexar, in fact, which is a different fact pattern, but this Court reversed based on this similar level of evidence where there was sufficient evidence. But not overwhelming evidence.
judges: Graber, Owens, Mahan